# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **THE INTERESTED UNDERWRITERS AT LLOYD'S and THAI TOKAI PRODUCT CO., LTD.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**M/T SAN SEBASTIAN and her freights *in rem*, OILMAR CO., LTD.,** *in personam*,<br><br>**Defendants.** | **1:03-cv-1778-WSD** |
| **PT CABOT INDONESIA and ATLANTIC MUTUAL INSURANCE CO.,**<br><br>**Intervening Plaintiffs,**<br><br>**v.**<br><br>**M/T SAN SEBASTIAN and her freights *in rem*, OILMAR CO., LTD.,** *in personam*,<br><br>**Defendants.** |  |

## <u>ORDER</u>

This matter is before the Court on Defendant Oilmar Co. Ltd.'s Motion to

Dismiss the Complaint of PT Cabot Indonesia, et al. [33], Intervening Plaintiffs PT

Cabot Indonesia and Atlantic Mutual Insurance Company's Motion to Stay this Action Pending Arbitration Proceedings [34], and Defendant Oilmar Co. Ltd.'s Motion to Dismiss the Complaint of the Interested Underwriters at Lloyd's, et al., for Lack of Prosecution [44].

## I.      BACKGROUND

This matter arises from a fire and explosion aboard the M/T San Sebastian (the "San Sebastian") while the ship was in the Red Sea.  The ship was carrying carbon black feedstock[1] under bills of lading for Plaintiff Thai Tokai ("Thai Tokai"), Intervening Plaintiff PT Cabot Indonesia ("PT Cabot") and non-party Carbon Black Public Co., Ltd. ("Carbon Black").  Thai Tokai's cargo was insured by Plaintiff The Interested Underwriters at Lloyds ("Lloyds"), and PT Cabot's cargo was insured by Intervening Plaintiff Atlantic Mutual Insurance Co. ("Atlantic Mutual").  The San Sebastian is owned by Oilmar Company, Ltd. ("Oilmar"), a Panamanian corporation whose only asset is the San Sebastian.

---

[1]  This material is used in, among other things, the manufacture of tires and ink.

Immediately following the explosion, Oilmar arranged for Smit Salvage BVD ("Smit") to transfer its feedstock cargo to the M/T Santa Cruz.[2]  Disputes have arisen between Oilmar and Thai Tokai, PT Cabot and Carbon Black under the bills of lading covering the cargo.  On June 10, 2003, litigation was instituted by Energy Transport, Ltd. ("ETL") against Oilmar in the United States District Court, Southern District of New York.  ETL alleged that Oilmar was negligent and breached the contracts of carriage.  PT Cabot joined the suit as a plaintiff on June 26, 2003.  Litigation then was commenced by Oilmar in the United States District Court for the District of Connecticut when it filed a declaratory judgment action regarding the discharge of the cargo.[3]  Three subsequent actions[4] were filed in the

---

[2]  Smit required Lloyd's to post a bond in the amount of $580,000 as a condition of arranging the transfer.  The bond was for the purpose of assuming payment to Smit for the salvage work it performed.

[3]  Oilmar Co. Ltd., Panama v. Energy Transport, Ltd. et al., Civ. No. 3:03-cv-1121, was filed in the District of Connecticut on June 25, 2003, and later stayed pending arbitration.

[4]  The cases are The Interested Underwriters at Lloyd's and Thai Tokai Product Co. Ltd v. M/T San Sebastian and her freights, in rem, and Oilmar Co., Ltd, in personam, Civ. No. 303-cv-1125 (CDF), filed on June 26, 2003; PT Cabot Indonesia v. M.V. San Sebastian et al., Civ. No. 303-cv-1147 (CDF), filed on July 1, 2003; and Carbon Black Public Co. Ltd. v. M.V. San Sebastian, et al., Civ. No. 303-cv-1153 (CDF), filed on July 1, 2003.

Connecticut District Court.  In these three cases (the "Connecticut Actions"),

Plaintiffs sought to attach, pursuant to Rules B and C of the Supplemental Rules

for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure

(the "Supplemental Rules"), the freights owed to Oilmar under bills of lading held

by Odin Marine ("Odin").  Rule B attachments were granted *ex parte* in each of the

three cases and the maritime arrest of freights under Rule C were granted *ex parte*

in two of them.

    The instant action was filed in this Court on June 26, 2003.  Plaintiffs allege

in this case the same claims asserted in the other actions.  The purpose of filing this

ancillary action here was to serve Supplemental Rule arrests and attachments on

freights owned by ETL, a company with offices located in this district.  The

amount of the freights attached has been stipulated at $580,000 and this amount has

been paid into the registry of the Court.

    On March 24, 2005, the Court granted PT Cabot and Atlantic Mutual's (the

"Intervening Plaintiffs") motion to file an intervening complaint in this action,

(Order [24]), and the Intervening Complaint [27] was filed on March 30, 2005.  The

Court permitted the Intervening Plaintiffs to intervene pursuant to Rule 24(a) of the

Federal Rules of Civil Procedure because the Intervening Plaintiffs assert an interest

in the freights at issue in this action, including the ETL freights previously attached and paid into the registry of this Court.[5]

## II.   <u>DISCUSSION</u>

> A.   Defendant Oilmar's Motion to Dismiss Lloyd's and Thai Tokai's <u>Complaint for Lack of Prosecution</u>

Defendant Oilmar moves the Court to dismiss Plaintiffs Lloyds and Thai Tokai's complaint in this action pursuant to Federal Rule of Civil Procedure 41(b) and Rule 41.3 of the Local Rules for the Northern District of Georgia.  Defendant Oilmar contends Plaintiffs Lloyds and Thai Tokai have "deliberately failed to prosecute their action after their attempt to transfer it failed."  (Oilmar's Mot. to Dismiss for Lack of Prosecution at 3.)[6]  Plaintiffs Lloyds and Thai Tokai argue dismissal is not appropriate because they are actively prosecuting their claims in the District of Connecticut "where the main litigation involving this claim is taking

---

[5]  The Court also found "it is inevitable the claims and defenses will have common issues of fact and law."  (Mar. 24, 2005 Order at 16.)  <u>See</u> Fed. R. Civ. P. 24(b).

[6]  The Court does not find Defendant Oilmar's argument that "Lloyd's litigation strategy is one of remarkable bad faith, even from a party known to attempt to insist on its 'home turf,'" helpful, and cautions both parties to refrain from using this kind of contentious language which distracts from an objective evaluation of the issues before the Court.  (<u>See</u> Def. Oilmar's Reply in Supp. of Mot. to Dismiss for Lack of Prosecution at 4.)

place." (Pls.' Opp'n to Def. Oilmar's Mot. to Dismiss for Lack of Prosecution at 4.) Plaintiffs Lloyds and Thai Tokai note that PT Cabot is arbitrating its claims against Oilmar in the New York action, and that Plaintiffs Lloyd's and Carbon Black have moved in the Connecticut action to compel Oilmar to arbitrate their claims in that proceeding. (<u>Id.</u>)

The decision to dismiss an action for failure to prosecute is within the Court's discretion. <u>See</u> <u>Gratton v. Great Am. Comms.</u>, 178 F.3d 1373, 1374 (11th Cir. 1999). "Dismissal under Rule 41(b) is appropriate where there is a clear record of 'willful' contempt and an implicit or explicit finding that lesser sanctions would not suffice." <u>Id.</u> Defendant Oilmar's analysis of Plaintiffs' willfulness and whether lesser sanctions will suffice is, at best, superficial. (<u>See</u> Def. Oilmar's Mot. to Dismiss for Lack of Prosecution at 5-6.) This Court previously has noted this action is "a duplicative action," filed for the purpose of attaching freights located in this district. In view of the peculiar, limited posture of this case, and the significant actions taken by the parties in related actions, the Court finds that dismissal for lack of prosecution is not warranted here. However, the Court is concerned about the just and efficient resolution of this proceeding. To aid the Court in its management of this case, all parties shall file with the Court a joint status report detailing the

6

status of proceedings in the related cases, including anticipated dates for the

completion of the arbitration proceedings and other pending matters. The joint

status report shall be filed with the Court on or before April 17, 2006.

B. Defendant Oilmar's Motion to Dismiss the Complaint of PT Cabot

Defendant Oilmar moves to dismiss Intervening Plaintiffs' Complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 56(b).[7]

Defendant Oilmar contends the Intervening Plaintiffs' Complaint must be dismissed

because the Court lacks subject matter jurisdiction because Intervening Plaintiffs

lack standing.[8]

---

[7]  On November 2, 2005, nearly five months after submitting its Reply to Intervening Plaintiffs' Opposition to its Motion to Dismiss, Defendant Oilmar filed a Motion to Amend its Motion to Dismiss the Complaint of PT Cabot Indonesia, et al. [46]. As grounds for amending its motion, Defendant Oilmar references the Intervening Plaintiffs' August 24, 2005 Notice of Filing in this Court the Second Circuit Court of Appeals' decision in the related New York action, dated August 15, 2005. The Intervening Plaintiffs' Notice of Filing references their pending Motion to Stay, does not assert any arguments, is not submitted in connection with Defendant Oilmar's Motion to Dismiss, and, consequently, does not provide any basis to allow Defendant Oilmar to supplement its motion. Because the parties have exhaustively briefed the issues Defendant Oilmar presents in its motion to amend, and Defendant Oilmar has failed to present any compelling reason to allow it to supplement its briefing, the Court denies Defendant Oilmar's Motion to Amend its Motion to Dismiss the Complaint.

[8]  Defendant Oilmar also contends the Court lacks subject matter jurisdiction because the Court has no *in rem* jurisdiction over the vessel or her freights.

7

Defendant Oilmar's argument that the Intervening Plaintiffs lack standing to pursue this action is based on its assertion that PT Cabot did not obtain title to the damaged cargo until after the fire onboard the San Sebastian.  Because PT Cabot was not the owner of the cargo at the material time, and Atlantic Mutual's rights are derivative of PT Cabot's, Defendant Oilmar claims Intervening Plaintiffs do not have standing to pursue this action.  Intervening Plaintiffs contend the standing issue was fully litigated in the New York action and that court's determination was correct and should be given preclusive effect.

On June 10, 2003, an action arising out of the loss of the San Sebastian was filed in the United States District Court, Southern District of New York. See Energy Transport, Ltd. v. M.V. San Sebastian, 348 F. Supp. 2d 186 (S.D.N.Y.

---

Defendant raised its *in rem* jurisdiction argument in its opposition to PT Cabot and Atlantic Mutual's motion to file an intervening complaint.  (See Def. Oilmar's Mot. to Dismiss at 19 ("These arguments were raised in opposing the Intervention Motion.").)  The Court rejected Defendant Oilmar's argument, (see Mar. 24, 2005 Order), and declines to reconsider it in its current cast as a challenge to standing. See also Energy Transport, Ltd. v. M.V. San Sebastian, 269 F. Supp. 2d 416, 418 (S.D.N.Y. 2003) (distinguishing between unpaid freights, which are still part of the vessel and subject to arrest, and paid freights, which are not considered a part of the vessel).  The Court notes Defendant Oilmar only moves to dismiss the Intervening Plaintiffs' Complaint on this basis, and does not move to dismiss the original complaint filed in this action.

2004) (the "New York action").  In the New York action, plaintiffs ETL and PT

Cabot moved to compel defendant Oilmar to arbitrate the dispute.  Defendant

Oilmar objected to PT Cabot's standing to bring the action on the grounds that PT

Cabot's parent company has been fully compensated by its insurance carrier,

Atlantic Mutual, for the losses sustained in the incident.  The court found (i) both

plaintiffs, including PT Cabot, have standing to bring the underlying claims, (ii)

both parties are real parties in interest, (iii) the parties are compelled to arbitrate their

claims in front of a single arbitration panel and (iv) the action should be stayed

pending arbitration.  See Energy Transport, Ltd. v. M.V. San Sebastian, 348 F.

Supp. 2d 186 (S.D.N.Y. 2004).

Defendant Oilmar moved for reconsideration of the New York court's order,

contending, *inter alia*, "that PT Cabot does not have standing to sue because it did

not obtain title to the cargo until after the explosion that caused the damage."  See

Energy Transport Ltd. v. M.V. San Sebastian, No. 03 Civ 4193, 2005 WL 549542,

at *4 (S.D.N.Y. Mar. 9, 2005).  In support of its argument, defendant Oilmar

referred the court to an invoice dated July 21, 2003[9], which stated:  "Passage of

---

[9]  In the motion before the Court, Defendant relies on a May 12, 2003 invoice
with the same "Passage of Title at vessel's flange Destination Port" language upon

Title at vessel's flange Destination Port."  The court denied defendant's motion for reconsideration.  Finding its decision on standing proper, the court stated it "decided the issue of standing because it was one of defendant's central arguments in its motion to compel argument."  Id. at *3.  The court also noted defendant Oilmar did not contend the invoice was newly discovered evidence and that defendant "apparently possessed [the invoice] prior to the issuance of the Order." Id. at *4 n.6.  The court found defendant's standing theory based on the invoice "is an entirely different theory not previously presented to the Court that cannot be properly considered here."  Id. at *4.[10]

Collateral estoppel forecloses relitigation of an issue of fact or law which has been litigated and decided in a prior suit.  Collateral estoppel applies to jurisdictional issues, as well as to other issues.  See N. Ga. Elec. Membership Corp. v. City of Calhoun, 989 F.2d 429, 432-33 (11th Cir. 1993); see also Cutler v. Hayes, 818 F.2d 879, (D.C. Cir. 1987) (finding collateral estoppel barred relitigation

which Defendant relied in seeking reconsideration by Judge Leisure.

[10]  On August 15, 2005, the United States Court of Appeals for the Second Circuit dismissed Defendant Oilmar's appeal of the district court's order on the grounds that the district court stayed the underlying action and the appellate court did not have jurisdiction to consider the appeal.  (See Notice of Filing [43].)

of prior court's decision that plaintiffs had standing to pursue claim).  Under

federal law, collateral estoppel bars relitigation of an issue when:  (i) the issue is

identical to the issue involved in prior litigation; (ii) the issue was actually litigated in

the prior suit; (iii) the determination of the issue in the prior litigation was a critical

and necessary part of the judgment; and (iv) the party against whom the earlier

decision is asserted had a full and fair opportunity to litigate the issue in the earlier

proceeding.  I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th

Cir.1986).[11]  Defendant Oilmar contests each of these requirements.

In this case, all of the prerequisites for application of collateral estoppel are

met.  Defendant Oilmar and Intervening Plaintiff PT Cabot are both parties in the

New York action.  The New York court considered the exact question presented

by Defendant Oilmar here -- whether PT Cabot had standing to bring suit against

Oilmar.  See Energy Transport, Ltd., 348 F. Supp. 2d at 195 ("[T]he Court finds

that plaintiffs have standing to bring the underlying claims.").  Defendant Oilmar

_____

[11]  The Court applies the federal law of collateral estoppel to this admiralty
case.  See CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees,
327 F.3d 1309, 1316 (11th Cir. 2003) ("We now hold that federal preclusion
principles apply to prior federal decisions, whether previously decided in diversity
or federal question jurisdiction.").

attempts to define the "issue" decided in the New York action too narrowly by

claiming the New York court only addressed one of its arguments against standing.

This argument is not persuasive.  See Pleming v. Universal-Rundle Corp., 142 F.3d

1354, 1360 n.7 (11th Cir.1998) (noting with approval a number of cases which hold

"that failure to make all the arguments possible in support of a position in the first

litigation does not preclude the application of collateral estoppel").  "When an issue

is properly raised, by the pleadings or otherwise, and is submitted for

determination, and is determined, the issue is actually litigated."  Pleming, 142 F.3d

at 1359.  Reviewing the orders in the New York action, it is clear that Oilmar had

every opportunity to actually litigate its challenge to PT Cabot's standing and the

issue was decided against it.[12]  See Energy Transport Ltd., 2005 WL 549542, at *3

("[T]he Court decided the issue of standing because it was one of defendant's

central arguments in its motion to compel arbitration.").

     Defendant Oilmar had a full and fair opportunity in the New York action to

show that PT Cabot lacked standing to pursue its claims; it failed to do so.  Having

---

[12]  Reviewing the New York court's order on Oilmar's motion for reconsideration, it is clear that Defendant Oilmar's present motion is not based on newly acquired evidence.

lost on this issue, Defendant Oilmar is barred by collateral estoppel from now raising the identical issue, against the same party, in this ancillary proceeding. The Court is particularly concerned about efficiency and the risk of inconsistent determinations in this case in which the dispute is being fully litigated in parallel proceedings, and this Court became involved to serve Supplemental Rule arrests and attachments on freights located in this district.[13]  "Collateral estoppel has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." CSX Transp., Inc., 327 F.3d at 1317.  Both of these interests are served by applying the doctrine in this case.[14]

---

[13]  The Court's review of the litigation before it and Judge Leisure discloses that Defendant is engaged in litigating conduct which is heightening the risk of inconsistent decisions.  On the one hand, Defendant insisted this matter be litigated here and also apparently resists seeking a mechanism for the presentation and resolution of all issues arising from the loss of the ship at issue.  The result is litigation inefficiency, increased litigation costs for all parties, and thus, ultimately, a net reduction of compensation for any losses alleged and proved.

[14]  Even if Defendant Oilmar could challenge Intervening Plaintiffs' standing, such challenge would be unavailing at this time and would not divest the Court of subject matter jurisdiction pursuant to 28 U.S.C. § 1333.  Defendant admits that Atlantic Mutual made substantial payments to PT Cabot's parent corporation for claimed losses sustained in the May 2, 2003 incident.  Furthermore, that the Sale Invoice relied on by Defendant Oilmar provided for passage of title at the port of delivery, is not conclusive that PT Cabot was not injured when it ultimately received

C.     Intervening Plaintiffs' Motion to Stay this Action Pending Arbitration
       <u>Proceedings</u>

Intervening Plaintiffs move the Court to stay this action pursuant to 9 U.S.C.

§ 3 of the Federal Arbitration Act ("FAA").[15]  Intervening Plaintiffs argue this

action should be stayed because the United States District Court, Southern District

_____

and took possession of the damaged goods.  <u>See, e.g.</u>, <u>Prevor-Mayorsohn
Caribbean, Inc. v. Puerto Ricko Marine Mgmt, Inc.</u>, 620 F.2d 1, 3-5 (1st Cir. 1980)
("Long-established admiralty practice allows either an owner or consignee to
recover for damage to cargo . . . .").  Defendant Oilmar's standing challenge is
better framed as a challenge to the Intervening Plaintiffs' status as the real parties in
interest, which, even if properly before the Court, would not require dismissal of
the action at this time.  <u>See</u> Fed. R. Civ. P. 17(a) ("No action shall be dismissed on
the ground that it is not prosecuted in the name of the real party in interest until a
reasonable time has been allowed after objection for ratification of commencement
of the action by or joinder or substitution of, the real party in interest . . . .")  Rule
17(a) is "intended to prevent forfeiture when determination of the proper party to
sue is difficult or when an understandable mistake has been made."  Fed. R. Civ. P.
17 Advisory Committee note (1966).  Here, in light of the New York court's prior
finding that PT Cabot is a real party in interest under Rule 17(a), <u>Energy Transport
Ltd.</u>, 348 F. Supp. 2d at 196, any mistake certainly would be understandable.
Defendant Oilmar may challenge the determination of the real parties in interest at a
later stage of these proceedings.

     [15]  Defendant Oilmar filed a Motion for Oral Argument [39] requesting oral
argument on Intervening Plaintiffs' Motion to Stay this Action and Defendant
Oilmar's Motion to Dismiss.  The Court finds the parties have had sufficient
opportunity to argue the issues presented by the pending motions and that oral
argument will not be helpful to the Court.  <u>See</u> L.R. 7.1E, N.D.Ga. ("Motions will
be decided by the court without oral hearing, unless a hearing is ordered by the
court.").

14

of New York has directed ETL and PT Cabot to arbitrate their claims against Defendant Oilmar before an arbitration panel.[16]  See Energy Transport, Ltd. v. M/T San Sebastian, 348 F. Supp. 2d 186 (S.D.N.Y. 2004).

Defendant Oilmar opposes Intervening Plaintiffs' Motion to Stay.  Defendant Oilmar mistakenly responds to an argument that this Court should compel arbitration of these proceedings -- that argument is not before the Court.  Besides reiterating points made in support of its motion to dismiss, Defendant Oilmar does not raise any salient points in opposition to Intervening Plaintiffs' motion.[17]

The court in the New York action ordered ETL and PT Cabot to arbitrate their claims against Defendant Oilmar.  This Court will not revisit that court's determination that "PT Cabot's claims [against defendant Oilmar] are arbitrable under the Charter's arbitration provision."  Energy Transport, Ltd., 348 F. Supp. 2d at 207.[18]

_____

[16]  As stated previously, the New York action arises from the same facts as the case before this Court.

[17]  Intervening Plaintiffs assert the basis for subject matter jurisdiction is that this action is an Admiralty claim within the meaning of Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333.

[18]  In connection with the underlying incident, Atlantic Mutual paid to Cabot Corp. a total of more than $1.4 million.  "Pursuant to PT Cabot's instructions,

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts
> of the United States upon any issue referable to
> arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending, upon
> being satisfied that the issue involved in such suit or
> proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay
> the trial of the action until such arbitration has been had in
> accordance with the terms of the agreement, providing
> the applicant for the stay is not in default in proceeding
> with such arbitration.

9 U.S.C. § 3.  Based on the New York court's determination that the issues

between the parties are arbitrable and arise under an agreement in writing for

arbitration, a stay of Intervening Plaintiffs' claims in this action is appropriate

pursuant to Section 3 of the FAA.[19]

---

Cabot distributed $452,215.32 to various third parties for expenses related to the
explosion, used $876,261 to repay an existing debt owed by PT Cabot to Cabot,
and retained the remaining $99,979.34 for future use by PT Cabot."  Energy
Transport, Ltd., 348 F. Supp. 2d at 196.  Atlantic Mutual's claims, therefore, are
derivative of PT Cabot's claims.

[19]  Even if not mandated by Section 3 of the FAA, the Court finds a
discretionary stay of Intervening Plaintiffs' claims while the issues in this case are
arbitrated in related actions is appropriate.  See IDS Life Insurance Co. v.
SunAmerica, Inc., 103 F.3d 524, 529 (7th Cir. 1996) (noting "[i]t is always open to
a party to ask the court to stay proceedings in his case pending decision in another
case.").

III.   **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Oilmar Co. Ltd.'s Motion to Dismiss the Complaint of the Interested Underwriters at Lloyd's, et al., for Lack of Prosecution [44] is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file with the Court, on or before April 17, 2006, a joint status report detailing the status of proceedings in the related cases, including anticipated dates for the completion of arbitration and other pending matters.

**IT IS FURTHER ORDERED** that Defendant Oilmar's Motion to Dismiss the Complaint of PT Cabot Indonesia, et al. [33] is **DENIED**, and Defendant Oilmar's Motion to Amend its Motion to Dismiss the Complaint of PT Cabot Indonesia, et al. [46] is **DENIED**.

**IT IS FURTHER ORDERED** that Intervening Plaintiffs PT Cabot Indonesia and Atlantic Mutual Insurance Company's Motion to Stay this Action Pending Arbitration Proceedings [34] is **GRANTED**, and this action is **STAYED**

as to Intervening Plaintiffs PT Cabot Indonesia and Atlantic Mutual Insurance Company's claims.

**IT IS FURTHER ORDERED** that Defendant Oilmar's Motion for Oral Argument [39] is **DENIED**.

**SO ORDERED** this 28th day of March, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE